Filed 9/16/25  Conn v. Conn CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT L. CONN et al., | |
| Plaintiffs and Appellants, | G062448, G062455 |
| v. | (Super. Ct. No. 30-2020-01150274) |
| ROWENE MACMILLAN CONN, Individually and as Trustee, etc., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Kim R. Hubbard, Judge. Reversed with instructions.

Charles K. Mills for Plaintiff and Appellant Laurance C. Conn.

Robert L. Conn in pro. per., for Plaintiff and Appellant.

Tredway Lumsdaine & Doyle, Brandon L. Fieldsted and Brian J. Ramsey for Defendant and Respondent.

\*          \*          \*

This appeal arises from a trust dispute between Laurence (Larry) and Robert (Robby) Conn, on the one hand, and their stepmother, Rowene MacMillan Conn, on the other. Larry and Robert are remainder beneficiaries of a trust created upon the death of their father, Ralph B. Conn, Rowene's husband (the "Exemption Trust"). Upon his death, Rowene, acting as trustee, was obligated to fund the Exemption Trust with Ralph's one-half share of the couple's community property, which consisted entirely of a one-half interest in the family residence. The trust required that the funding occur in cash or in-kind.

Instead of transferring either the cash equivalent or the property itself, Rowene took no action for over three years. In 2013, she executed an unsecured promissory note payable to the trust, listing herself as the borrower. She used the note to purchase Ralph's 50 percent interest in the residence, but valued the property based on a 2010 appraisal—three years out of date. In 2018, she made a "final" distribution to the decedents, which Larry accepted but Robby did not, based on the 2010 appraisal.

The trial court held Rowene violated her fiduciary duty by relying on the stale appraisal, and it awarded damages to Robby (but not Larry) based on the difference between the stale appraisal and an appraisal as of the time she executed the promissory note, plus interest.

We agree with the court's ruling that Rowene violated her fiduciary duties, though we conclude the court erred in its damages award in three ways. First, because Robby never accepted any prior distributions, awarding him the *difference* between the disbursement offer and the proper appraisal was insufficient. He should have been awarded his full distribution. Second, Larry was equally entitled to a full distribution. Third, because

Rowene is the income beneficiary of the trust, Robby and Larry were not entitled to any interest accrued during the administration of the trust.

The other major issues in this case surround the finality of the 2018 distribution. Although Larry signed a document describing the distribution as final, he contends he should not be held to have waived any further benefits from the trust. Rowene contends Larry committed fraud because he accepted the money with no intent to honor the finality of the distribution.

We agree with Larry. The final distribution did not contain a waiver of any breaches of trust by Rowene, and there is no evidence that Larry knew Rowene had improperly funded the trust. We reject Rowene's fraud claim because, regardless of Larry's subjective intent when he signed the agreement, he is bound by its terms, as far as they go, and he was entitled to file a lawsuit to resolve the scope of the agreement.

Ultimately, Rowene's fiduciary duties require her to offer a final disbursement that reflects a properly funded trust. Because Larry already accepted the initial disbursement, he is entitled to the difference between what he was given and what he should have been offered. Because Robby did not accept the disbursement, he is entitled to the full amount, properly calculated.

## STATEMENT OF FACTS

Larry and Robby are the adult children of Ralph Conn, who married Rowene in 1986.[1]

---

[1] Ralph had a third adult child, Catherine Conn Timme, who is not a party to this proceeding.

In 2007, Ralph and Rowene established an inter vivos revocable trust. At that time, they transferred their residence in Newport Beach into the trust.

Under the terms of the inter vivos trust, upon the first death of one of the spouses, three new trusts would be created, only two of which are relevant here: the Survivor's Trust, to be funded with the survivor's one-half share of the community estate, and the Exemption Trust, to be funded with decedent's one-half share. The surviving spouse became the sole trustee of both trusts.

This appeal centers principally on the Exemption Trust. The Exemption Trust provides, "Upon the death of the Deceased Grantor and in the event that the Deceased Grantor is Grantor Husband, all of the assets of the Exemption Trust . . . shall be distributed to the children of RALPH CONN, CATIE CONN TIMME, ROBERT LEE CONN, and LARRY C. CONN." However, somewhat inconsistently, it then provides, "[I]n the event the Exemption Trust is not distributed to the beneficiaries described above, the Trustee shall pay to . . . the Surviving Grantor, all of the net income of the Exemption Trust . . . ." Not only is the Surviving Grantor entitled to the income, but also has a power of invasion: "If at any time, in the discretion of the Trustee, the Surviving Grantor shall be in need of additional funds for his or her reasonable health, education, support or maintenance, the Trustee, in addition to the income payments herein above provided, may in its discretion, pay to or apply for the benefit of the Surviving Spouse of the Grantor, such amounts of principal of the Exemption Trust, up to the whole thereof, as the Trustee may, from time to time deem advisable. The Surviving Grantor need not exhaust other sources of income or assets to be entitled to such payment." The parties have interpreted these provisions as providing the surviving

4

spouse a life estate in the Exemption Trust, with the children being remainder beneficiaries.

Elsewhere, the inter vivos trust provides discretion to the trustee to make any property divisions either in kind or in money.

The inter vivos trust also specified that the interests of income beneficiaries were considered primary over remainder beneficiaries: "The primary purpose of this Trust Agreement is to provide for the income beneficiaries and the rights and interests of remainder men are subordinate to that purpose. The provisions of this agreement shall be construed liberally in the interest of and for the benefit of the income beneficiaries."

Finally, the inter vivos trust provided a six-month grace period for the surviving spouse to make any property distributions pursuant to the trust, and, within that period, "the deferred division or distribution shall be made as if it had taken place at the time prescribed in this instrument . . . ."

Ralph passed away in November 2010.

Rowene commissioned an appraisal of the residence as of the time of Ralph's death, which valued the residence at $1,172,500.

Rowene did not fund the Exemption Trust at that time, nor within the six-month grace period provided by the inter vivos trust. Instead, in September 2013, she essentially sold the 50 percent interest in the residence to herself by funding the Exemption Trust with an unsecured "Demand Note" in the amount of $475,321.34, which bore interest at a rate of 0.35 percent per year. That amount was calculated by taking the appraised value of the home as of November 2010, subtracting the existing mortgage, and dividing the remainder by two to come up with the amount of Ralph's community property interest. She then conveyed Ralph's fifty percent

interest in the residence to a new trust, of which she was the primary beneficiary.[2] This was all done on the advice of counsel.[3]

Beginning in March, 2018, Robby began asking for a meeting with Rowene and her counsel to go over the administration of the trust. His requests were repeated numerous times and in various ways over the ensuing seven months, but Rowene either ignored him or put him off.

Sometime near the end of April 2018, Rowene mailed to Ralph's children a document entitled "Disbursement to the Children of R.B. Conn." That document stated, "I, Rowene M. Conn, do hereby make the final distribution from the Estate of Ralph B. Conn, their father, to his three heirs: to Catharine Conn Timme, Robert L. Conn, and Laurence C. Conn." It then went on to explain the use of the Demand Note, as well as how the value of the residence was calculated. It also explained the amount of each heir's distribution. It concluded: "Please sign, date, and return to me that you are receiving the final payments and that the demands of the Note have been fulfilled."

When Larry received the Disbursement Letter, he was aware that Robby had concerns about the administration of the trust. He was also aware that Robby did not intend to sign it. Nevertheless, with the exception

---

[2] The actual conveyance was from the inter vivos trust to Rowene as trustee of the Rowene M. Conn Trust established September 25, 2013 (the new trust). This demonstrates that the Exemption Trust was never given Ralph's fifty percent of the community property.

[3] There was a significant discrepancy on the Demand Note. It was dated November 15, 2010. However, Rowene would later admit in amended discovery responses that the Demand Note was actually prepared in September 2013.

of asking for a correction of the spelling of his name, Larry signed it without further objection. Larry received his distribution of $145,623.12.[4]

Robby, however, did not sign the letter and continued seeking a meeting with Rowene. That meeting finally occurred on October 10, 2018. According to Robby's testimony, Rowene's counsel admitted at the meeting that the Exemption Trust had not been properly funded and that the Exemption Trust was entitled to a 50 percent interest in the residence.

PROCEDURAL HISTORY

Larry filed a petition in the probate court against Rowene on June 30, 2020. In it, he alleged Rowene breached the trust by undervaluing the residence and backdating the demand note. He further alleged that Rowene's distribution fraudulently denied Larry the benefit of appreciation on the residence, both by undervaluing the residence and by including an interest rate well below the expected appreciation of the residence. Larry sought damages of at least $162,900.37, plus punitive damages.

Rowene filed a cross-petition against Larry on April 21, 2021. She alleged that Larry fraudulently induced the disbursement by signing it without any intention to honor the finality of the payment. Rowene sought recission of the disbursement and damages.

Robby filed his petition against Rowene on May 21, 2021. Also alleging breaches of fiduciary duty, Robby sought damages and removal of Rowene as trustee. He also alleged a cause of action for elder abuse.

The matter came on for trial in November 2022 and continued on several nonconsecutive days through early 2023. Ruling on Larry's petition, the court first made an adverse credibility finding, stating, "By the time

---

[4] Catharine also signed the letter and received her distribution.

7

Larry Conn was done testifying, he had no credibility with this Court, whatsoever." On the merits, the court affirmed the enforceability of the Disbursement Letter, finding Rowene had acted in good faith, and it denied Larry's petition in its entirety.

The court likewise denied Rowene's cross-petition for fraud against Larry. The court found insufficient evidence "that Larry had the requisite intent to defraud . . . ."

The court granted Robby's petition in part. It ruled that Rowene was entitled to fund the Exemption Trust with an unsecured IOU, but that she breached the trust agreement by funding the Exemption Trust in 2013 based on an appraisal of the property as of 2010. The court then calculated the difference between the 2010 and 2013 valuations, and it awarded Robby his 1/3 share of that difference in damages. It then calculated interest at 10 percent per year, resulting in a total damage award to Robby of $76,383.57. The court rejected Robby's claim for elder abuse.

Larry and Robby appealed, and Rowene filed a cross-appeal.

DISCUSSION

I.

THE FUNDING OF THE EXEMPTION TRUST

Both Larry and Robby contend Rowene breached the terms of the trust by funding the Exemption Trust with an unsecured demand note. We agree.

"The interpretation of a will or trust instrument presents a question of law unless interpretation turns on the credibility of extrinsic evidence or a conflict therein." (*Burch v. George* (1994) 7 Cal.4th 246, 254.) The essential facts surrounding the funding of the trust are undisputed and thus we apply a de novo review.

8

We begin with an overview of the relevant trust provisions. Under the terms of the inter vivos trust, upon the death of Ralph, Rowene was required to divide the existing res of the trust into, as relevant here, two different trusts: the Survivor's Trust, which contained her separate property and her 50 percent share of the community property, and the Exemption Trust, which was to contain Ralph's separate property and his 50 percent share of the community property. This was supposed to occur "On the death of the Deceased Spouse," which Rowene failed to do at that time. That was a breach of trust.

Next we consider *what* was to be gifted to each trust. The funding of the Survivor's Trust was expressly permitted to "be satisfied in cash or in kind, or partly in each, only with assets to be valued at the date or dates they are distributed to the Survivor's Trust . . . ." The provisions concerning the Exemption Trust do not contain a similar provision, but instead require funding with "the balance of the Trust Estate," which was expected to consist of Ralph's separate and community property. Nevertheless, under the general powers of the trustee, section 16.1(O), a similar power to fund in either cash or in kind is conferred: "In any case in which the Trustee is required, pursuant to the provisions of the Trust, to divide any Trust property into parts or shares for the purpose of distribution, or otherwise, the Trustee is authorized, in the Trustee's absolute discretion, to make the division and distribution in kind, including undivided interests in any property, or partly in kind and partly in money, and for this purpose, to make such sales of the Trust property as the Trustee may deem necessary on such terms and conditions as the Trustee shall see fit." Given the way the trust is structured and the powers conferred to the trustee, the trial court concluded that the funding requirements applicable to the Survivor's Trust apply equally to the

9

Exemption Trust. The parties do not dispute that interpretation, and we agree it is sound. Rowene was entitled to fund the trust with either an interest in the property or its cash equivalent.

The trial court found that Rowene breached the trust by funding it in 2013 but relying on a valuation of the residence as of 2010. This breached the provision, quoted above, that the asset be "valued at the date or dates they are distributed." Rowene does not really dispute the trial court's findings in this regard, and we agree the court's findings are correct.

Where the parties principally differ is in whether Rowene was entitled to fund the Exemption Trust with an unsecured promissory note. The trial court found it was within Rowene's powers as trustee to do so. We conclude otherwise.

The trust required that the funding be in "cash" or "in kind." Those are straightforward terms. "Cash" is about as clear as can be: it means money; currency. The term "in kind" has a well-known meaning in the law: it means the property itself. Black's Law Dictionary defines a "distribution in kind" as "A transfer of property in its original state, such as a distribution of land instead of the proceeds of its sale. (DISTRIBUTION, Black's Law Dictionary (12th ed. 2024).) This is consistent with the trust itself, which qualifies the term "in kind" with the phrase "including undivided interests in any property." This shows the trust itself understood "in kind" to refer to actual property as well. A promissory note is neither cash nor "in kind" property.

Rowene counters that section 16.1(O) of the trust (quoted above) permits the trustee "absolute discretion" and confers the power to "to make such sales of the Trust property as the Trustee may deem necessary on such terms and conditions as the Trustee shall see fit." However, she takes those

10

portions out of context. The "absolute discretion" is the discretion to choose between a cash distribution or an in-kind distribution; it is not the absolute discretion to fund the trust with something else altogether. And while the trustee does have the power of sale, that power is qualified by the phrase "for this purpose"—i.e., for the purpose of a cash or in-kind distribution. In other words, the trustee can sell the property and distribute the cash proceeds from the sale. But that power does not alter the fundamental obligation to fund the Exemption Trust with either cash or an interest in the property itself. In concluding otherwise, the trial court erred.

## II.

### DAMAGES

The second major point of disagreement between the parties is whether Robby and Larry were entitled to any damages. We first address the damages awarded to Robby and then damages to Larry.

The trial court awarded approximately $76,000 in damages to Robby, consisting of Robby's share of the difference between the 2010 and 2013 appraisal of the property, which amounted to $33,750, plus interest at 10 percent per year, compounding annually, from 2013 to 2023. Robby contends he should have been granted his entire distribution, not just the difference, whereas Rowene contends Robby was not entitled to any damages at all. We agree with both parties in part: (1) the court should have granted Robby his full distribution, but (2) Robby was not entitled to interest between 2013 and 2018.

We begin with the amount of the distribution. The court awarded Robby the difference between the 2010 appraisal and the 2013 appraisal. But this would only make sense if Robby had already received the distribution

11

based on the 2010 appraisal. Unlike Larry, he did not. Thus, he should have been awarded the full amount of his distribution utilizing the 2013 appraisal.

Rowene takes the position that because the Disbursement Letter constituted a waiver of any further liability for Rowene, she was entitled to make a selective early disbursement to only those beneficiaries who signed the waiver but refuse a distribution to those who did not. On that logic, because Robby did not sign the waiver, he was not, and is not, entitled to any distribution. We disagree.

Rowene reads too much into the Disbursement Letter. It was not a waiver agreement. Nowhere does the Disbursement Letter mention anything about a waiver or release of liability. The closest it gets is (1) describing the distribution as "final", and (2) a signature line acknowledging *receipt* of the distribution and "that the demands of the Note have been fulfilled." We have already determined that the Note was a breach of her duty, and thus that part of the Distribution Letter has no effect. Beyond that, the recipients were not asked to agree to anything at all, much less a waiver of liability.

Ultimately, Rowene decided to fully distribute the principal of the trust prior to her death. She was not required to do that. However, as the trial court observed, once she made that decision, she had to carry it out in a manner that was consistent with her fiduciary duties. That included a requirement that she properly calculate the principal and fully distribute it to all of the beneficiaries. Because she took on that duty as trustee, Robby was entitled to enforce it.

However, we agree with Rowene that awarding interest damages from 2013 was error. Indeed, Larry concedes the error. The problem is that the trust is clear that *Rowene* is the income beneficiary of the Exemption

12

Trust. Larry and Robby are remainder beneficiaries. Even when Rowene dies, while the principal must be distributed to Ralph's children, *Rowene's* children are entitled to any income that had not been previously distributed to Rowene. Because Robby is not entitled to any income generated by the principal of the trust, there was no sound basis for awarding Robby interest from the period of 2013 through the time of trial.

Nevertheless, Robby contends the court should have awarded interest starting in May 2018, which was the time Rowene decided to distribute the rest of the trust. In theory, at least, interest from 2018 makes some sense. Since Robby was entitled to a distribution at that time based on Rowene's decision to liquidate the trust, he could have invested his distribution and earned income from the investment, but he was deprived of that opportunity by Rowene's breach.

There is a potential problem, however. Where does the interest payment come from? If Rowene fully distributes the properly funded Exemption Trust, there will be nothing left to pay interest. And the trust exonerates Rowene from any personal liability "so long as the Trustee shall have been acting in good faith and without gross negligence." The trial court made an express finding that Rowene was relying on the advice of counsel in good faith throughout her administration of the trust, and we have no reason to disturb that finding.

While this is an issue that needs to be explored, because this issue has not been adequately briefed, we will remand to the trial court to consider in the first instance whether interest can and should be awarded from 2018 onward.

The other issue of damages concerns Larry. The trial court denied Larry's petition in its entirety. However, our conclusions above apply equally

13

to Larry. He is also entitled to a full distribution from the trust based on the 2013 appraisal.

Rowene's principal argument against Larry is that he signed the Disbursement Letter, which Rowene characterizes as a waiver. The trial court agreed with that characterization. As we explained above, we do not. When the Disbursement Letter used the word "final," that meant Rowene intended to fully distribute the Trust leaving nothing to be distributed in the future. What it did *not* purport to do is waive any breaches of the trust or release Rowene from any liability as trustee. Nowhere in the Disbursement Letter is the word "waiver" or "release" mentioned. It simply did not touch on that topic at all. Moreover, it did not even require an acknowledgment that the terms of the *trust* had been fulfilled—it required an acknowledgment that the terms of the *Demand Note* had been fulfilled.

Additionally, even if the Disbursement Letter had purported to release Rowene, it would not have complied with Probate Code section 16464. That section provides that a beneficiary may release a trustee from a breach, but such a release is not effective in the following circumstances: "(2) Where the beneficiary did not know of his or her rights and of the material facts (A) that the trustee knew or reasonably should have known and (B) that the trustee did not reasonably believe that the beneficiary knew," and "(4) Where the transaction involved a bargain with the trustee that was not fair and reasonable." (Prob. Code, §§ (b)(2), (b)(4).) There was no evidence that Larry actually knew about Rowene's breach of trust, and the transaction did involve a bargain with the trustee that was not fair—Rowene sold the residence to herself at a below market price.

Both because the Distribution Letter did not purport to be a waiver or release, and also because it would have failed the test of Probate

14

Code section 16464 in any event, Larry was not precluded from seeking his full distribution under the trust.

*       *       *

The foregoing resolves most of the major issues surrounding the interpretation and implementation of the trust. We turn now to more peripheral issues briefed by the parties.

III.

ROBERT'S APPEAL WAS TIMELY

Rowene contends Robert's fiduciary duty claims are time-barred under Probate Code section 16460, which imposes a three-year statute of limitations from the date a beneficiary receives sufficient disclosure of a claim. Rowene argues the limitations period began in April 2018 when she transmitted the Disbursement documents. Robert's petition was filed in May 2021.

Even assuming the statute began to run in April 2018, Robert's claims are timely. In response to the COVID-19 pandemic, the Judicial Council enacted Emergency Rule 9(a), which tolled unexpired statutes of limitations from April 6 to October 1, 2020. (*Ross v. Seyfarth Shaw LLP* (2023) 96 Cal.App.5th 722, 743.) That 178-day tolling period extends the three-year limitations window, in this case, to October 2021. Because Robert filed in May 2021, his claims fall well within the extended period.

We reject Rowene's argument that Robert forfeited reliance on Emergency Rule 9 by not raising it in the trial court. The applicability of judicially enacted tolling rules presents a pure question of law on undisputed facts, which we may consider for the first time on appeal. (*Ramirez v. Department of Motor Vehicles* (2023) 88 Cal.App.5th 1313, 1335.) Robert's petition was timely.

15

## IV.

### ROBBY'S CLAIM FOR ELDER ABUSE

Robby asserted a cause of action for financial elder abuse based on him turning 65 on August 12, 2020. Even though most of the relevant events of this case took place before he turned 65, he contends Rowene still committed elder abuse because, after he turned 65, Rowene *retained* the property. (See Welfare & Institutions Code, § 15610.30, subd. (a)(1) [defining financial elder abuse to include "retain[ing] real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud"].) However, his argument depends on the premise that Rowene was obligated to transfer an interest in the residence to the trust. As we have already concluded, Rowene had the option of funding the Exemption Trust with money *or* in kind, and in 2013, she chose money (albeit mistakenly believing a promissory note satisfied that condition). Since that occurred well before Robby turned 65, we agree with the trial court that his claim for elder abuse fails. (See Welf. & Inst. Code, § 15610.27 [defining "elder" as a person age 65 or older].)

## V.

### THE TRIAL COURT'S FINDING THAT ROWENE ACTED IN GOOD FAITH

Robby challenges the trial court's finding that, in funding the trust, Rowene acted in good faith on the advice of counsel. His principal challenge to that finding is that the court erred in excluding evidence that when Robby met with Rowene and her counsel in 2018, Rowene's counsel, in an admission against interest, took the position that the trust required Rowene to transfer an interest in the property to the trust.

Assuming the trial court erred in excluding that evidence, we are not persuaded the error was prejudicial. As we have already concluded, the

16

alleged position taken by Rowene's counsel at that time was erroneous. Rowene was entitled to fund the trust with money rather than an interest in the property. As such, its relevance is limited. Moreover, Rowene's good-faith reliance would have occurred in 2013 when she actually funded the trust, and thus her counsel's statements in 2018 have little relevance and were not likely to change the trial court's finding of good faith. Accordingly, exclusion of that evidence was not prejudicial.

VI.

ROWENE'S FRAUD CLAIM

Finally, Rowene claims the trial court erred in concluding she had not proven her fraud claim against Larry. Rowene's fraud claim was based on Larry's testimony stating that he did not intend the Disbursement Letter to be final and did not intend the Disbursement Letter to be a contract. Rowene contends this testimony compelled a finding that Larry committed promissory fraud. The trial court found Larry did not have the requisite intent to commit fraud.

Rowene's fraud claim makes very little sense to us. As we have already noted above, the Disbursement Letter was not clearly a contract. It characterized the disbursement as "final," but the nature of the document was more an explanation by Rowene of how she calculated the disbursement. The only arguable contractual term in it came in the signature line and was an acknowledgment that the terms of the Demand Note had been satisfied. We can certainly understand the ambiguity Larry may have felt upon reading it.

Moreover, Rowene's fraud claim has another, more fundamental problem. This is not your typical promissory fraud case where a party promises to do something without any intent to do it. There was nothing left

17

for Larry to do. He signed the acknowledgment, and the Disbursement Letter did not call for any other action on his part. To the extent the Disbursement Letter created any legal obligations, it would have been enforceable regardless of Larry's subjective intent. So it is not clear what exactly the misrepresentation was. He was certainly entitled to file a lawsuit to test the validity and scope of the agreement, and, in any event, if the claim is that he committed fraud by filing a lawsuit, that claim would run headlong into the litigation privilege. (*See Silberg v. Anderson* (1990) 50 Cal.3d 205, 214 [litigation privilege "immuniz[es] participants from liability for torts arising from communications made during judicial proceedings" and noting it applies to theories of fraud].) Accordingly, Rowene's fraud claim was problematic on multiple levels and the court was correct to reject it.[5]

*    *    *

---

[5] Larry filed a motion to dismiss Rowene's cross-appeal as to the court's ruling on his fraud claim. He argued that Rowene's notice of cross appeal specified only the appellate case number for Robby's appeal, not his. We deny that motion. Rowene's cross appeal must be interpreted liberally. (*K.J. v. Los Angeles Unified School District* (2020) 8 Cal.5th 875, 882.) Rowene's notice of cross appeal was sufficient because it specified the ruling that contains the trial court's decision on the fraud claim. Our ruling is consistent with other courts that have held that specifying the wrong case number does not render a notice of appeal ineffective. (See *In re Jordan* (1992) 4 Cal.4th 116, 131 fn.9; *Aguilar v. Gostischef* (2013) 220 Cal.App.4th 475, 479 ["affixing the wrong case number on a notice of appeal does not warrant dismissal"].)

In the end, our resolution of this appeal simply requires Rowene to do what she already decided to do: make a final distribution of the Exemption Trust assets to each beneficiary. That final distribution must be properly calculated based on the 2013 appraisal of the residence, which is the sole asset of the Exemption Trust.

## DISPOSITION

The judgment is reversed. On remand, the court is instructed to award Robby and Larry the full amount of their final trust distribution based on the evidence from the first trial. The court is further instructed to assess whether an award of interest is appropriate from 2018 onward. Robby and Larry shall recover their costs incurred on appeal.


SANCHEZ, J.

WE CONCUR:


MOTOIKE, ACTING P.J.


SCOTT, J.

19